OPINION OF THE COURT
David Demarest, J.
Petitioner commenced this CPLR article 78 proceeding to obtain information pursuant to article 6 of the Public Officers Law (Freedom of Information Law or FOIL). In essence, petitioner requested, and was denied a list of potential customers, names and addresses of customers responding to respondent’s questionnaires, proposed contracts with certain customers, and lists of all accounts extended credit currently or within the past two years. Respondent denied access to these requests based on Public Officers Law § 87 (2) (b), (c) and (d). At oral argument the parties conceded petitioner’s FOIL request was limited to commercial customers only, and not private individuals.
INTRODUCTION
" 'The Freedom of Information Law unequivocally makes all agency records open to the public unless they fall within one of its enumerated exceptions * * * All records are presumptively available and exemptions must be narrowly construed to *8 ensure maximum access to public records * * * The burden of proof rests on the agency that claims an exemption from disclosure * * * Mere conclusory allegations, without factual support, that the requested materials fall within an exemption are insufficient to sustain an agency’s burden of proof ” (Matter of Professional Stds. Review Council v New York State Dept. of Health, 193 AD2d 937 [3d Dept 1993], citing Matter of Polansky v Regan, 81 AD2d 102, 103 [3d Dept 1981]).
In light of the presumption of disclosure, respondents are faced with the burden of proving a statutory exemption exists prohibiting access. Respondents have asserted the following sections of the Public Officers Law as statutory bases to deny petitioner’s FOIL requests: section 87 (2) (b) "if disclosed would constitute an unwarranted invasion of personal privacy under the provisions of subdivision two of section eighty-nine of this article;” section 87 (2) (c) "if disclosed would impair present or imminent contract awards or collective bargaining negotiations;” section 87 (2) (d) "are trade secrets or are submitted to an agency by a commercial enterprise or derived from information obtained from a commercial enterprise and which if disclosed would cause substantial injury to the competitive position of the subject enterprise”. The court will address each exemption, individually.
SECTION 87 (2) (b): PERSONAL PROPERTY
Based on the parties’ concession at oral argument as well as respondent’s March 31, 1995 memorandum of law, it is apparent the personal privacy exemption cited by respondents in denying petitioner’s FOIL request was in response only to information sought respecting individuals. Petitioner’s FOIL request being now limited to commercial entities only, the court need not address the propriety of this exemption as the issue is moot.
SECTION 87 (2) (c): PRESENT OR IMMINENT CONTRACT AWARDS
Bereft of any decisional law respecting the term "contract awards” as used in section 87 (2) (c), the court must decide whether petitioner’s FOIL requests would "impair present or imminent contract awards”; and moreover, whether respondent’s "proposed contracts with certain customers” constitute contract awards as intended to be afforded protection from disclosure pursuant to statute. In any instance, characterization of the agency’s activities as governmental or proprietary have been held to be indeterminant vis-á-vis disclosure of records. (Matter of Westchester Rockland Newspapers v Kimball, *9 50 NY2d 575, 578 [1980].) In reviewing advisory opinions of the Committee on Open Government it is apparent they construe the phrase as applicable to contract negotiations. However, the Committee has also stated: " 'the application of § 87 (2) (c) and the decisions cited in the discussion of that provision are based upon the effects of disclosure and specific facts. In my view, insofar as disclosure would impair the parties’ capacity to engage in agreements, § 87 (2) (c) would likely be applicable. If, however, disclosure would not impair the negotiating process or the position of the parties to the negotiations, I do not believe that § 87 (2) (c) could justifiably be asserted as a basis for denial.’ ” (See, FOIL-AO-6395 [Dec. 24, 1990, at 7].)
Respondent urges the court to interpret this exemption to "include situations where an agency is negotiating agreements with potential customers where, if information were provided to private industry as its competitors, the agency’s successful negotiation of the contracts would be impaired.” Petitioner calls the court’s attention to the effects of nondisclosure in two separate scenarios whereby disclosure of the agency’s records would cause the agency to lose, or impair its ability to obtain, a contract: (1) agency soliciting bids for receipt of services for lowest possible price and (2) agency providing services to the public at highest price. In the former scenario, permitting the agency to claim the section 87 (2) (c) exemption would assure the agency of the lowest possible price; and in turn, the benefit would be passed on to the general public in the form of receiving necessary goods and services at the lowest possible price. Whereas, if respondent was permitted to avail itself of the exemption in the latter scenario, the public would be adversely affected since respondent would be acting in a proprietary capacity (i.e., seeking the highest possible profits) from the public as its customers. It is petitioner’s position this would constitute misuse of the exemption since nondisclosure will not benefit the public, and the agency is created for the public’s benefit.
The burden being on the respondent agency to establish an exemption from disclosure, the court finds the materials requested by petitioner do not constitute the type of material which would "impair present or imminent contract awards”. ■ Specifically, respondent has failed to demonstrate the information sought constitutes anything more than preliminary negotiations, falling short of the Legislature’s intendment in using the term "contract awards”. Respondent has failed to come forth with factual support the exemption applies. Although it is possible the exemption may apply in limited circumstances, the respondent has failed to fulfill its burden in this regard.
*10 SECTION 87 (2) (d): TRADE SECRETS OR CAUSE SUBSTANTIAL INJURY
It is respondent’s opinion that either prong of this exemption validates its decision to withhold the information sought by petitioners. Specifically, respondents assert the information sought by petitioners constitutes either "trade secrets” or would "cause substantial injury to the competitive position of the subject enterprise”. It is the position of petitioner that "§ 87 (2) (d) does not contain an exemption which may be asserted by respondent to protect itself.” Specifically, petitioner argues that the language of the second prong "or are submitted to an agency by a commercial enterprise or derived from information obtained from a commercial enterprise and which if disclosed would cause substantial injury to the competitive position of the subject enterprise” (emphasis added) is determinative.
It is apparent to the court that the second prong of subdivision (d) is inapplicable to the case at bar since the information sought to be withheld on the basis of "substantial injury to the competitive position” does not apply to the agency itself. Instead, the exemption respecting "substantial injury” only applies when an agency is requested to release information submitted to it which, if disclosed, would cause substantial injury to the commercial enterprise’s competitive position.
Petitioner also asserts that the exemption for "trade secrets” applies in this same fashion, to wit: trade secrets of the commercial enterprise with which the agency is dealing, as opposed to the trade secrets of the agency itself. Respondent points to the statutory language and asserts that this is an unfair reading of the statute. The court is inclined to agree.
At oral argument the parties agreed that an agency may possess "trade secrets”. The court in Matter of Syracuse & Oswego Motor Lines v Frank (Sup Ct, Onondaga County, Oct. 15, 1985, Miller, J., index No. 85-5409) held that an agency may possess trade secrets. In that case, Justice Miller denied disclosure on the basis that the respondent’s list of charter customers constituted trade secrets so as to be protected by the provisions of Public Officers Law § 87 (2) (d). Unfortunately, the order does not set forth the circumstances or facts as to how the customer list was compiled and whether it met the stringent requirements of Leo Silfen, Inc. v Cream (29 NY2d 387 [1972]). Again, the burden is on the respondents to set forth the bases on which its customer list constitutes a "trade secret”. Respondent has failed to carry its burden of demonstrating its customer lists constitute a "trade secret” in that *11 their customers are "not known in the trade or are discoverable only by extraordinary efforts” nor has respondent shown that their "customer’s patronage had been secured by years of effort and advertising effected by the expenditure of substantial time and money” (Leo Silfen, Inc. v Cream, at 392-393, supra). Similar to milk route customers in the case of Abdallah v Crandall (273 App Div 131 [3d Dept 1948]), every commercial enterprise in St. Lawrence County which requires or uses waste transportation services is, by the very nature of the business, "open and notorious”.
"A trade secret, like any other secret, is nothing more than private matter; somethink [sic] known to only one or a few and kept from the general public, and not susceptible to general knowledge (Kaumagraph Co. v. Stampagraph Co., 235 N. Y. 1 [1923]).” (Leo Silfen, Inc. v Cream, at 394-395, citing Abdallah v Crandall, supra.) That is not to say, however, that information such as statistics and data derived from surveys and marketing techniques would not constitute trade secrets but, a bare list of commercial customers for waste transportation services does not constitute "trade secrets” per se in this case. Respondents have failed to sustain their burden that the customer list constitutes a "trade secret”, since mere conclusory allegations, without factual support, are insufficient to sustain nondisclosure. (See, Matter of Polansky v Regan, 81 AD2d 102, supra.)
CONCLUSION
The burden of proof rested on respondent to claim an exemption from disclosure. Respondent has failed to fulfill this burden and is directed to comply with petitioner’s FOIL requests encompassing its commercial customer lists, proposed contracts in existence at the time of petitioner’s FOIL request, and the commercial credit accounts.